# Wright v. Levan

C.P. of Berks County, No. 13-18527

SPRECHER, *J.*, Oct. 31, 2014—

Findings of Facts

I. Civil Action: Loreen M. Wright v. Nelson Allen Knotts et al, 09-17534

1. On December 27, 2007, the car in which plaintiff, Loreen M. Wright, was a passenger was operated on the Westshore Bypass, Reading, Pennsylvania. It was struck from behind by a large utility truck driven by Nelson Knotts of West Virginia.

2. The next month plaintiff hired John D. Levin, Esquire to represent her in the action.

3. Mr. Knotts was driving the utility truck on behalf of Shaft Drillers Intl, LLC and Coastal Drillers East, LLC. All were named as defendants in civil action 09-17534 filed in the court of common pleas of Berks County on December 24, 2009 by plaintiff's attorney John D Levan Esquire.

4. Plaintiff was diagnosed at Reading Hospital with a sprained neck and later, from February 2008 through August 2008, she underwent several epidural and facet injections. She testified that she had relief from the initial treatment but subsequent treatments were unsuccessful. Surgery was considered but deemed too risky because of plaintiff's diabetes. Plaintiff continued to treat her pain with medication.

5. Plaintiff treated with the Reading Neck and Spine Center, David J. Abraham, M.D. Dr. Abraham diagnosed a fracture of the neck as revealed by CAT scan/MRI. Plaintiff treated with pain and anti-inflammatory medications. She testified that she still treats with pain medicine and muscle relaxers today.

Background information: Delay in filing and service of plaintiff's complaint

6. It took attorney Levan two years from the date of injury for plaintiff's complaint to be filed. It took nearly a year thereafter for the complaint to be served on any defendant.

7. The complaint, as stated, was filed on December 24, 2009. An amended complaint was filed on December 28, 2009. No service of either the complaint or the amended complaint on defendants occurred; thus on July 12, 2010, attorney Levan praeciped to reinstate the amended complaint. Again, attorney Levan did not serve any of the defendants. On October 7, 2010, attorney Levan filed a second praecipe to reinstate the amended complaint; it was

reinstated that day by the Prothonotary of Berks County. Service of the complaint on defendants was finally made thereafter.

First Fact Issue: Discovery Delay and Non-Compliance with Court Orders

8. On November 29, 2010, Paul W. Grego, Esq. entered his appearance for defendants Shaft Drillers International, LLC and Coastal Drilling East, LLC and for driver.

9. On November 30, 2010, attorney Grego sent interrogatories and request for production of documents to attorney Levan.

10. Attorney Levan failed to respond.

11. On April 28, 2011 attorney Grego filed a certificate of attempt to resolve discovery Issues complaining that no response was provided by attorney Levan. Attorney Grego had written to attorney Levan on January 6, 2011 and February 8, 2011 inquiring why answers to discovery were not provided. No response was filed by attorney Levan to the pleadings or the letters.

12. Defendant sent correspondence to attorney Levan at an alternate address and attempted by telephone calls to reach attorney Levan. Attorney Levan never responded.

13. On May 3, 2011, defendants, through attorney Grego, filed a motion for court order to compel plaintiff's response to discovery.

14. The next day, senior judge Albert A. Stallone, ordered that plaintiff respond to said discovery within 30

days. Attorney Levan did not comply.

15. On June 10, 2011, defendants filed a motion for sanctions. A rule was issued upon plaintiff ordering attorney Levan to file an answer within 30 days.

16. Service could not be made on attorney Levan because his law office address was no longer receiving mail and no forwarding address was provided. The order was ultimately served on attorney Levan September 8, 2011 by the Sheriff of Berks County.

17. Finally, on September 28, 2011, attorney Levan filed a response. He claimed he had not received defendants' discovery request.

18. On October 18, 2011, attorney Grego praeciped defendant's motion for argument on Monday, November 21, 2011.

19. On said date, attorney Levan failed to attend argument court and judge Lash ordered that plaintiff comply with discovery within 30 days.

20. Attorney Levan again failed to comply. Defendant again filed a motion for sanctions on December 23, 2011 with accompanying brief. The case was reassigned to the undersigned and on January 19, 2012 a court order issued scheduling a hearing for March 2, 2012.

Second Fact Issue: Non Pros Entered; Sanctions Imposed

21. Attorney Levan again failed to appear for the hearing on March 2, 2012 and a judgment of non pros

was entered against his client. Plaintiff was ordered to pay $2,500 in legal fees and costs.

22. On December 10, 2012, Attorney Eric Winter entered his appearance for Ms. Wright for these specific issues only — he filed a petition to open non pros and a petition to assign the $2,500 sanction from plaintiff to attorney Levan. This court scheduled a hearing for February 8, 2013.

23. On February 4, 2013, attorney Grego filed a reply to the motion, objecting to the motion to open judgment. This court scheduled a hearing/argument for March 8, 2013, at 10:00 a.m. notice was provided to attorneys Grego, Levan, and Winter. Attorney Levan failed to attend the hearing or to respond.

24. On March 8, 2013, this court issued a rule to show cause upon attorney Levan to show why he should not be assigned the said $2,500 sanction from his client and that his client be relieved of this responsibility. Rule returnable and hearing were scheduled for March 18, 2013.

25. Prior to March 18, 2013, attorney Levan notified this court that he would accept said assignment of debt.

26. On April 26, 2013, this court issued an order denying the petition to open judgment but granted the assignment of the debt from plaintiff to attorney Levan.

II. Legal Malpractice Action: Loreen M. Wright v. John D. Levan, 13-18527

27. On August 1, 2013, Laura M. Siegle, Esquire entered

her appearance and filed the underlying legal malpractice civil complaint on behalf of Loreen M. Wright, plaintiff against John D. Levan, Esquire.

28. Defendant Levan was served a copy of the complaint by the Sheriff of Berks County on August 14, 2013. He filed an answer thereto on September 27, 2013.

29. Defendant Levan was deposed on December 3, 1013 at which time he stated under oath, *inter alia*, that he would provide to plaintiff a copy of her file.

30. Plaintiff's attorney, Laura M. Siegle, Esquire, wrote to defendant Levan reminding him that his representation made under oath at his deposition included his promise "to forward a complete copy of the file in Ms. Wright's case within 2 1/2 weeks" and that she "expected to receive these documents . . . all papers, documents, notes, and records, and the complete contents of your Wright files no later than December 20, 2013."

31. On December 6, 2013, attorney Siegle served defendant Levan with a request for production of documents. Having received no response from defendant Levan, plaintiff again reminded him by letter of January 15, 2014 that discovery must be answered within seven day or sanctions will be moved against him. He failed to respond.

Third Fact Issue: Defendant Levan's Continuing Refusal to Comply

32. As a result, this court, on January 29, 2014, issued

a rule upon defendant Levan answerable within 30 days.

33. Defendant Levan did not respond. Thus, on April 7, 2014, plaintiff filed a supplemental memorandum of law in support of plaintiff's motion to compel production of documents and for sanctions.

34. This court issued an order on May 2, 2014 entering judgment in favor of plaintiff in the legal malpractice action in light of defendant Levan's failure to respond in any way to the said motions, rules to show cause, Rules of Civil Procedure or to the court's orders.

35. A hearing was set for May 20, 2014, at 1:30 p.m. The request for an amount of fees and costs from defendant Levan as further sanctions was set for the said time as was the hearing for the assessment of damages owed by defendant Levan to his client, Loreen M. Wright, in the underlying malpractice complaint.

36. On May 15, 2014, plaintiff filed a written request for a continuance of the May 20, 2014 hearing which this court granted and relisted the said hearing for July 3, 2014, at 10:30 a.m.

37. The said damages hearing was conducted on July 3, 2014. After failing to attend all prior hearings that were each scheduled by court order, defendant Levan finally attended this one. All parties and counsel were present for the first time.

## Discussion

Defendant Levan and Ms. Wright entered into a

written contract in January 2008 that covered the full legal representation and the payment of legal fees and reimbursement of costs. Defendant Levan failed to move forward in the litigation and allowed the case to be dismissed for his failure to prosecute.

The only actions defendant Levan did take were consistently completed at the last minute. He filed the civil complaint 72 hours before the claim would be waived by non-compliance with the statute of limitation laws of Pennsylvania. For some reason he then filed an amended complaint four days later, but, for other reasons unknown, he failed to effectuate service on any defendants of either the original or amended complaint. The amended complaint was reinstated on praecipe, but not until July 21, 2010, exactly seven months after the complaint was first filed. Again, the service rules were not followed; thus, defendant Levan praeciped the prothonotary a second time on October 7, 2010 to reinstate the complaint. Service was finally made — a full eleven months after the civil complaint was originally filed.

No further action, whatsoever, was even attempted by him on behalf of his client. No further pleadings and no discovery of any type was pursued. There was also no record of any communications from him to his client providing an explanation for non-action. There is also no evidence of him communicating in anyway at any time to opposing attorney(s) even after phone calls and letters were received at his law office. Nor was any notice provided by him to anyone that he changed his address,

closed his office, or discontinued phone service.

### Summary of Omissions Leading Up to Non Pros Ruling

He failed to respond to at least ten court filings, several court-ordered hearings, and countless telephone and pretrial attempts at contact. The full record shows that defendant Levan caused a judgment of non pro to be entered against his client for his failure to prosecute the claim. He managed to totally violate court orders issued individually by three different judges of the Berks County Court of Common Pleas: Senior Judge Albert A. Stallone, judge Scott E. Lash, the undersigned.

The aforesaid merely sets the stage for the most damning actions of omissions yet to come.

### Attorney Levan vs. His Former Client

After attorney Siegle was retained by plaintiff, he failed to comply with his statement given under oath at his disposition by refusing to deliver the complete file to his client and/or to her new attorney, attorney Siegle. In addition, he received two separate letters from attorney Siegle, one in December 2013 and the other in January 2014, following his deposition reminding him what he swore to do on a timely basis. Defendant Levan simply ignored these letters the same as he did court orders and the Rules of Civil Procedure and the many court documents filed and served on him. He also failed to comply with a request for production of documents issued by his former client in December 2013.

It is difficult to imagine the possibility of any more egregious contemptuous behavior by defendant Levan, but, shockingly, that's exactly what happened. Although he refused to comply in anyway as aforesaid, including failing to even deliver his client's file to new counsel as he promised under oath to do, he now prepared, he now took action, he now appeared in court, but not for the benefit of his client, Ms. Wright. On the contrary, he took action and prepared very well *against* his former client. He who took little ethical responsibility to help his client now was well-prepared to cut her up on cross-examination. He used the very contents of the file against his former client at the damages hearing that he refused to deliver to Ms. Wright or attorney Siegle. He prepared for cross-examination *of his client* in great detail on her preexisting medical treatments to show that the damages she is claiming, now against him in legal malpractice, on her underlying lost claim were not fully attributable to the accident. His goal, of course, was to minimize the amount of damages to be awarded against *him* by this court. To complicate matters, this cross-examination is proper except for one thing: he continued to hold the entire files of his client which he had refused to release to her or to attorney Siegle.

He did not even deliver a copy of the file to attorney Siegle the day of the hearing that he did choose to attend! Though he was ordered to do so, and promised under oath to do so, he had refused to forward the file. He then used the very file to cross-examine plaintiff, to attack her credibility — and opposing council could do nothing about it to protect her because she did not have the records

to prepare herself or her client to anticipate and counter his attacks. A copy of a portion of pages 45 and 46 of the official notes of testimony for the July 3, 2014 hearing recites attorney Siegle's objection.

24 you have struck testimony in somewhat similar situations, I

25 would ask the court now to strike the testimony since it

1 appears to be a proper remedy,

2 And it's simply because the history here with

3 Mr. Levan. Her motor vehicle accident case was dismissed for

4 the very reason that he did not provide any discovery or

5 answer any interrogatories. The case was then dismissed or

6 non-prossed. He never tells my client that, she gets a bill

7 for $2500 which he agrees to be made payable by him. To date

8 he hasn't paid it. It's flagrant disregard for the court.

9 THE COURT; Do you have any other questions at this

10 time, Mr. Levan?

MR. LEVAN; For Ms. Wright, yes, I do,

THE COURT: All right, well, then let's hear those.

And your objection continues. It's a standing objection.

And if you wish to make a further objection as a result of a

question that's asked or you want to use it in your argument

at the end, you are certainly free to do so. so and how much

longer do you have?

Defendant Levan uses his legal skills and preparation. For the first time in five years, he works hard on the case by reviewing the client's complete file to attack her testimony on damages. He uses her records as a shield to defend himself, to reduce her award of damages, the very damages that should have been pursued with professionalism and with gusto against the original defendants. Instead of ethically practicing law, and using all skills and documents and preparation to the full extent of his capacity as a sword to prosecute the claim and as a shield to protect his client against attacks in the underlying litigation, he forced the client to be fully exposed — without the protection of even advanced notice of what can and would be used against her had he delivered the file and answered the request for discovery. This is her original lawyer, the same person whose negligence caused her to endure seven years of

aggravation, frustration, uncertainty, non-communication, and delayed and, perhaps, reduced compensation for her damages sustained. Shockingly, the very professional legal skills, hard work, and preparation, absent on his client's behalf for seven years now come to light, not for her benefit but *against* her in a surprise attack as a sword to attack her credibility on cross-examination selfishly to reduce his own exposure to damages.

And, unlike Ms. Wright, he did not even have to hire an attorney to do the dirty work. He saved money by doing it himself.

## Conclusion

The two separate case files opened since the accident of December 27, 2007, needless to say, accumulated voluminous filings. The entire matter has also generated countless hours of time and preparation by this court. And still, after almost seven years of activity with almost complete non-compliance by defendant Levan with the Rules of Civil Procedure, the orders of this court, and the attorney's Code of Professional Responsibility, the entire matter is not yet complete. He acted with complete abandonment of his ethical and professional responsibility to Ms. Wright. Yet he chose not to accept his consequences and attempt to settle the case with his former client. No, instead he makes her continue to fight tooth and nail for fair compensation for her damages which were delayed for almost seven years due to his continuous failure to do anything for her. Now, for the first time, he wages a gallant fight but only to save his own hide at her expense.

For these reasons, this court finds that plaintiff must be awarded compensatory damages to reimburse her for her attorney fees, costs and loss of her claim. Plaintiff must also be awarded punitive damages because defendant's conduct was outrageous; it was malicious, wanton, wilful, and showed a reckless indifference to the interests of plaintiff.

A punitive damages award considers the character of the defendant's act, the nature and extent of the harm to plaintiff that the defendant caused, including plaintiff's trouble and expense in seeking to protect her interests, and defendant's wealth insofar as it is relevant in fixing an amount that will punish him and deter him and others from like conduct in the future.

In the case *sub judice*, defendant's conduct evidenced deliberate indifference and blatant dishonesty. He also violated several Rules of Professional Conduct: Rule 1.1 Competence — A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation; Rule1.3 Diligence — A lawyer shall act with reasonable diligence and promptness in representing a client; and Rule 1.4 Communications — A lawyer shall keep the client reasonably informed about the status of the matter and promptly comply with reasonable requests for information.

Defendant undertook the representation of plaintiff's case, but did little to nothing on it until threatened with

sanctions or penalties. Defendant made a mockery out of his representation of plaintiff and disrespected this court and the legal system. When confronted with the consequences of his bad actions, he turned on his client and gave himself the zealous representation he denied his client.

In accordance with the foregoing opinion, this court enters the following verdict.